# EXHIBIT A

# AIRCRAFT USE AND RESERVE AGREEMENT

This Aircraft Use and Reserve Agreement (The "Agreement") is entered into as of this 1st day of February, 2011 and is between **R&R Aircraft, Inc; N425SV, LLC & Brito Air,** (herein referred to as The "Operator") for Federal Aviation Administration in accordance with FAR Part 91(The "Operator") with a business address of 6704 Skyline Drive Delray Beach, FL 33446 and **Signature Group, LLC** (herein referred to as "The Lessee") with a business address of 1111 Brickell Avenue Suite 1100 Miami, FL 33131 and **Humes McCoy Aviation** (herein referred to as "The Agent") with a business address of 2040 Airport Road Atlanta, GA 30341

## RECITALS

WHEREAS, the Operator is permitted by the Federal Aviation Administration and pursuant to contract with the registered owner for management and operation of the following Aircraft: one (1) Gulfstream III Aircraft generally described by the following information: Manufacturer's Serial No. 360 (Registration No.) **N425SV** (Engines) two (2) Rolls-Royce, Left Engine (Spey) S/N, 11074 and Right Engine (Spey) S/N, 11077 (collectively the "Aircraft)

WHEREAS, Operator is desirous of providing the dedicated Aircraft to Lessee, for Lessee's use, and Lessee is desirous of the same; and

WHEREAS, the Agent shall provide an Aircraft Flight Crew to operate the aircraft within a reasonable period of time following a request from Lessee to provide crew for a scheduled itinerary.

By definition an Aircraft Flight Crew will consist of two (2) persons consisting of the following:

1. A Captain (PIC) and First Officer (SIC) certified by the Federal Aviation Administration, qualified to operate the subject aircraft in accordance with the Federal Aviation Regulations as they pertain to operation of a Part 91 Air Carrier and the Operation Specifications of the Operator.

2. A Cabin Attendant (F/A) provided by the Lessee.

NOW THEREFORE, in consideration of the covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby mutually agree as follows:

## AGREEMENT

1. AVAILABILITY OF AIRCRAFT

    The term of the use period shall commence on the date the Aircraft is first made available with flight crew to the Lessee (the "Delivery Date"). The Aircraft will be made available to the Lessee at Opa Locka Executive Airport (OPF) unless otherwise agreed to between the parties in writing.

2. THE EXCLUSIVE USE PERIOD

    The term of the use period shall be for a period of twelve (12) months (the "use Period") which shall commence upon the Delivery Date. The use Period may be extended upon mutual agreement of the parties, signed by each.

Signature Group,llc                                                                  R&R Aircraft, Inc.; N425SV, LLC & Brito Air



3. COMMENCEMENT FEE

On, or before the Delivery Date, Lessee shall deliver to Agent, in immediately available funds, the sum of $69,874.00 (the "Deposit"). The Deposit shall be applied to eliminate the Lessees first and last month's Base Rent obligations as set forth in Paragraph 4 below. The remaining $34,937.00 shall be held in escrow as a security deposit (the "Security Deposit"). The Security Deposit shall be released to the Lessee upon Operators confirmation to the escrow agent that the Aircraft was returned in substantially the same condition in which it was delivered. In the event the Operator makes a claim of damage by Lessee to the Aircraft, the Operator shall only release the security deposit upon delivery of signed consent by both parties, designating the manner in which it shall be released.

4. BASE RENT

Rent shall become due and owing on, or before, the first day of each month, until the Use Period sums to three-hundred and sixty-five (365) days. Provided the Delivery Date does not occur on the first of any given month, the fractional months of the Use Period shall be pro-rated to reflect the number of days the Aircraft is used the first and last calendar month of the Use Period. Accordingly, Lessee shall have made Base Rent payments in the total of $419,244.00 upon the conclusion of the Use Period.

5. ADDITIONAL COSTS

In addition to the above designated costs owed to the Agent by Lessee, and any other payments due under the Agreement, the Lessee shall be liable to the Agent for $1,280 per flight hour with a minimum of 20 flight hours monthly utilized by it, or its designee. during the Use Period (the "Block Charter Fee"). The Block Charter Fee shall cover all aircraft maintenance costs including scheduled inspections/maintenance and any unexpected issues. All maintenance shall be performed by the Operators Part 145 licensed maintenance/repair/overhaul facility, or that of its designee. Work shall be performed by FAA approved Gulfstream factory mechanics. All flight hours shall be reflected in the log books and recorded by the either the Hobbs meter or Recording Tachometer. Agent shall be provided a full time "On-Demand" Crew. Specifically, Agent will retain a Captain. (PIC) at a annum salary of $75,000.00. as well as a First Officer (Co-pilot) at the industry standard contract rate.

Additional costs for which the Lessee shall be strictly liable are: Fuel and services, catering, landing fees, international fees, hangaring, de-icing, flight phone, and any other service costs requested by the Lessee and agreed to between the parties ("Additional Costs"). Additional Costs shall be paid directly by the Lessee to the third- party vendor at, or before, the delivery of services of goods, unless the Operator, in its sole discretion, chooses to pay the third-party vendor for any service, or goods, a copy of the invoice shall be provided to the Lessee and Operator shall be reimbursed within five (7) days of the invoice submission. All amounts due and owing under this Paragraph shall be wired in accordance with paragraph 6 below. Lessee may also become financially liable for any damage to the Aircraft caused by it, or its authorized passengers', misuse, abuse, or negligence.

Signature Group,llc                                                R&R Aircraft, Inc.; N425SV, LLC & Brito Air

6. MANNER / CONDITIONS OF PAYMENT

All payments due and owing under the Agreement shall be made by wire transfer to Agents bank, as provided for within the attached **EXHIBIT "A."** Lessee hereby agrees that Lessee's obligations to pay rent and other payments due hereunder and to perform all other obligations hereunder are absolute. Abatement, diminution or reduction of the Base Rent or other charges payable by Lessee under the Agreement, shall be claimed by or allowed to Lessee for any inconvenience, interruption, cessation or loss of business or otherwise caused directly or indirectly by any present or future laws, rules, requirements, orders, directions, ordinances or regulations of the United States of America or any foreign, state, country or city government or any municipal government or lawful authority whatsoever or by priorities, rationing or curtailment of labor or materials or by any matter or things resulting there from or by any other cause or causes except as otherwise specifically provided in the Agreement

7. REPRESENTATIONS AND WARRANTIES

   a. Representations and Warranties of Operator: Operator represents and warrants to lessee that:

      1. Operator has power and authority to execute and deliver this use and perform its obligations hereunder

      2. Operator is a citizen of the United States as defined in the Federal Aviation Act of 1958, as amended, and the title to the Aircraft has been duly registered by the Federal Aviation Administration in the name of the Operator, or the Operator has been authorized by the title owner of Aircraft to operate. Operator makes all representations, promises, statements, or warranties, expressed or implied, with respect to the condition, merchantability, suitability, or fitness for a particular use of the Aircraft.

   b. Representations and Warranties of Lessee:

      1. Lessee represents and warrants to Agent that Lessee has full power and authority to execute and deliver the Agreement and perform its obligations hereunder.

      2. Lessee has adequate power and capacity to enter into and perform under, the Agreement, and any documents incorporated by its reference.

      3. All documents referenced herein, if any, including the Agreement itself, have been duly authorized, executed and delivered by Lessees and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided by limited under applicable bankruptcy and insolvency laws.

      4. No approval, consent or withholding of objections is required from any governmental authority of instrumentality with respect to the entry into or

Signature Group, llc                                    R&R Aircraft, Inc.; N425SV, LLC & Brito Air

performance by Lessee of the Documents except such as have already been obtained.

5. The entry into and performance by Lessee of the Documents will not:

   i. violate any judgment, order, law or regulation applicable to Lessee or any provision of Lessees Certificate of Incorporation or Bylaws, or similar document, or

   ii. result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon the Aircraft pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Lessee a party.

6. There are no suits or proceedings, pending or threatened, in court or before any commission, board or other administrative agency against or affecting Lessee, which would have a material adverse effect on the ability of Lessee to fulfill its obligations under this The Agreement.

7. Each Balance Sheet and Statement of Income and all other financial information delivered to Agent, if any, has been prepared in accordance with generally accepted accounting principles, and since the date of the most recent such Balance Sheet, Statement of Income and financial information, there has been no material adverse change.

8. Lessee is and will be at all times validly existing and in good standing under the laws of the State of its incorporation, unless executed as an individual.

9. Lessee has selected the Aircraft, manufacturer and vendor thereof, and approves of all maintenance facilities required hereby.

8. AIRCRAFT INTERCHANGE PROGRAM

In the event the Aircraft in unavailable as a result of scheduled maintenance, or any other caused beyond the Lessee's control, the Agent shall provide a substitute aircraft from among its fleet. During Lessees use of the substitute aircraft, the Agent shall remain liable for all Additional Costs incurred by the substitute aircraft as provided for in Paragraph 5. Depending on availability, the Lessee shall also be entitled to request an aircraft of lesser, or greater, value from within the Agent's fleet.

Signature Group,llc                                    R&R Aircraft, Inc.; N425SV, LLC & Brito Air

9. OPERATION OF AIRCRAFT

   a. Client shall at all times during the life of the Agreement remain operational control of the Aircraft as generally understood within the aircraft charter industry and by the Federal Aviation Administration FAR Part 91. And the Aircraft shall be generally operated as set forth below:

      1. Only in countries where insurance coverage is provided;

      2. In accordance with all laws, rules, regulations or orders applicable to the Aircraft; and,

      3. In such manner so as not to come within any of the exclusions from coverage set forth in the insurance policies required to be maintained by Operator. All parties agree that Signature Group will be operating privately and in accordance with FAR Part 91 exclusively. Lessee shall use the Aircraft only for the purposes and in the manner set forth in any application for insurance executed in connection with said Aircraft, to abide by and conform to, and cause others to abide by and to, all laws, ordinances, orders, rules and regulations, national, foreign, state, municipal, or otherwise now existing or hereafter enacted controlling or in any way affecting the operation, use, or occupancy of the Aircraft or other use of any airport premises by the Aircraft. The operation of the Aircraft shall at all times for the duration of the lease shall be under the exclusive control and in possession of Client.

      4. Operator shall provide Lessee with passenger service requested by Lessee which shall not be subject to Operator's approval and will operate in its sole and absolute discretion. Lessee shall provide Agent with at least **12 HOURS** prior written notice of its flight requirements. Except as otherwise set forth herein Agent shall provide the Aircraft and all items required to provide the services hereunder, including personnel, equipment, material, licenses, permits, training, maintenance and insurance. Notwithstanding the above, Lessee shall be responsible for any and all damage caused to the Aircraft by Lessee or any of the Lessee's guests or invitees.

10. MAINTENANCE OF AIRCRAFT

    a. Operator shall cause the airframe and engines to be maintained in good operating condition. With respect to all airframe and engine maintenance, subject only to the funding available out of the reserve maintenance program for the Aircraft's airframe and engines. Operator shall maintain all records, logs, and other materials required by the Federal aviation Administration, to be maintained in respect of the Aircraft after delivery, regardless of whom such requirements are by their terms, normally imposed. Operator shall take all steps necessary which are within its power to assure the Aircraft remains certificated by the Federal Aviation Administration or any other Civil Aviation Agency whose jurisdiction applies. Operator shall comply with all laws of the jurisdictions in which the Aircraft may be operated and with all rules of the FAA or other Civil Aviation Agency whose jurisdiction applied or any other legislative, executive, administrative or judicial body exercising any power or jurisdiction over the Aircraft, to the extent that such laws and rules effect the operation, maintenance or use of the aircraft.

    b. Whether maintenance on the Aircraft shall be required as a result of any Air Worthiness Directive, failure of equipment and parts, or resulting from an unscheduled event or incident, Agent shall use its best efforts to provide the Lessee with an aircraft of equivalent, or greater,

Signature Group, llc                                        R&R Aircraft, Inc.; N425SV, LLC & Brito Air

value and capabilities as the subject Aircraft. In the event a substitute aircraft is provided to the Lessee all terms of the Aircraft shall be applicable during the use of the substitute Aircraft. In the event Agent is unable to timely provide a substitute aircraft for any reason, Lessees Base Rent obligation shall be abated proportionately to the amount of time it is without the Aircraft of a substitute.

11.  REGISTRATION

Registration of the Aircraft will continue to be in the name of Operator as a U.S. registered Aircraft, and Lessee agrees that it will never attempt to change the registry to any other country. Further, Lessee will not allow the name of any person, association or corporations to be placed on the airframe or either engine as a claim of ownership.

INSURANCE - DAMAGE TO THE AIRCRAFT

Lessee shall at all times be named and insured under Operator's insurance policy for the Aircraft. Lessee shall be subject to the same terms and conditions of the use as are applicable to the Operator, with respect to any injury or loss sustained by Lessee. At all times during the life of the Agreement, the Aircraft shall be insured for coverage in an amount no less than One-Hundred Million Dollars. ($100,000,000.00 USD). At the request of Lessee, Operator shall furnish written evidence of the insurance maintained on the Aircraft and deliver such policies, or evidence of insurance, satisfactory to the Lessee, with premium receipts therefore, prior to delivery of the Aircraft, or at any time during the life of the Agreement. The Lessee hereby appoints Operator as the Lessee's attorney-in-fact to make proof of loss, claim for, negotiate settlement, receive payment of, and execute or endorse all documents, checks, or drafts for hull damage.

INDEMNIFICATION

Lessee herby assumes liability for, and agrees to indemnify Agent, Operator and its partners, officers, employees and agents (collectively, the "Indemnities") and to hold the Indemnities harmless from and against any and all liabilities, obligations, losses, damages, penalties, claims (including without limitation claims for liability in tort, strict or otherwise), actions, suits, costs, expenses and disbursements, including legal fees and expenses, of whatsoever kind and nature (collectively, "Liabilities"), whether or not any of the transactions contemplated hereby are consummated, imposed on, incurred by or asserted against any Indemnity, in any way relating to or arising out of.

EVENTS OF DEFAULT

The following events shall constitute events of default ("Events of Default") under the Agreement:

a.  Lessee shall fail to timely pay Base Rent, or any additional payments stipulated under the Agreement, within five (7) days of becoming due;

b.  Lessee shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder,

c.  Operator shall fail to perform or observe any covenant, condition or agreement to be performed or observed by it hereunder,

d.  Any representation or warranty made by Lessee herein or in any document furnished Operator in connection herewith shall prove to be incorrect at any time in any material respect; or,

Signature Group,llc                                    R&R Aircraft, Inc.; N425SV, LLC & Brito Air

   e. Lessee shall commit an additional voluntary act of bankruptcy under the bankruptcy laws of the United States or any other Jurisdiction; without the consent of Lessee, a receiver, trustee or liquidator of the Lessee shall be appointed by a court of competent jurisdiction or any substantial part of the property of Lessee shall be sequestered; or a petition against Lessee in a proceeding under the bankruptcy laws of any country (as now or hereinafter in effect) shall be filed against Lessee and shall not be withdrawn or dismissed within sexy (60) days thereafter.

8. REMEDIES

   Upon the occurrence of an Event of Default, Operator, without notice or further notice to Lessee, shall, at Operator's option, have the right to exercise concurrently or separately and without any election of remedies being deemed made, the following remedies:

   a. Proceed by appropriate action to enforce performance by Lessee or to recover from Lessee any damages and expenses sustained by Operator by reason of Lessee's default or on account of Operator's enforcement of its remedies hereunder,

   b. Upon notice to Lessee, terminate Lessee's rights hereunder;

   c. Declare immediately due and payable all sums due and to become due hereunder for the full term of this The Agreement.

MISCELLANEOUS

   a. As owner of the Aircraft, Operator shall have the right to secure indebtedness related to the Aircraft. Lessee hereby subordinates its rights under the Agreement to any present or future liens of any financing institutions arising from such indebtedness. Operators may NOT any time, assign, pledge, mortgage or transfer the Agreement and /or all of the rents and other sums at any time due and to become due or at any time owing or payable, buy the Lessee to the Operator under any of the provisions of the Agreement. Upon any such assignment the Operator or the assignee may give written notice to the Lessee stating the name and address of the assignee and all sums thereafter payable hereunder shall be paid to such assignee. Any assignment of the Agreement and /or the rents and other' sums due or to become due I respect of the Aircraft may be absolute. No assignee shall be obligated to perform any duty, covenant or condition required to be performed by the Operator under any of the terms hereof. Without the prior written consent of Operator, Lessee shall not assign its rights and obligations under the Agreement or transfer, pledge or hypothecate the Agreement. Nor shall Lessee permit its rights under the Agreement to be subject to any lien, charge or encumbrance or any nature. Lessee's interest herein is not assignable and shall not transfer or relinquish possession of the Aircraft (except for the sole purpose of repair or service of the Aircraft) without the prior written consent of Operator.

   b. All notices required under the terms and provisions hereof shall be in writing, or certified mail, return receipt requested, addressed (i) If to Lessee, Signature Group, LLC, 1111 Brickell Avenue. Suite 1100 Miami Fl 33131. The above addresses may be changed upon written notice. However, facsimile transmissions will be considered legal and binding. Further, either party's refusal to accept a certified letter will not constitute lack of service.

   c. The parties stipulate that Agreement shall be governed in accordance with the laws of the State of Florida and or the United States (including any conflict of laws). Florida shall be the

Signature Group,llc                              R&R Aircraft, Inc.; N425SV, LLC & Brito Air

exclusive jurisdiction for the resolution of any and all disputes arising out of the Agreement. Miami-Dade County, Florida shall be the exclusive venue for any lawsuit that is instituted as a result of this transaction or any occurrence hereunder. Lessee hereby waives strict compliance with any applicable laws concerning services of process and agrees to accept service by United States Mail. Further, if either party is compelled to hire an attorney or if any litigation is initiated to enforce the terms of this contract, it is agreed that the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, including costs and fees incurred in any appeal. EACH PARTY AGREES TO WAIVE ITS RIGHT TO A TRIAL BY JURY.

d.  The relationship between the Agent and Lessee shall always and only be that of Agent and Lessee. The Lessee shall never at any time during the term of the Agreement, for any purpose whatsoever, be or become the agent of the Agent, and the Agent shall not be responsible for the acts or omissions of the Lessee or its agents.

e.  The Operator's failure to strictly enforce any provisions of the Agreement shall not be deemed a waiver thereof or as excusing the Lessee from future performance.

f.  The Invalidity or any portion of the Agreement shall not affect the remaining valid portions thereof.

g.  The agreement will be filed for recordation as provided in the United States Federal Aviation Act of 1958 and any amendment thereof or statue adopted in lieu thereof, and is not required to be filed or recorded in any other place in order to preserve and perfect the right, title and interest of the Operator in the Aircraft.

h.  Client and Operator agree that it will make an inspection of the Aircraft within twenty (20) days of return of the Aircraft by lapse of time or otherwise. Lessee may, at its option, have one of its representatives present during the inspection. Within twenty (20) days of completion of the inspection, Consultant will invoice Lessee for any work required to satisfy all commitments and obligations contained in the Agreement and Lessee shall promptly pay to Consultant.

i.  The Agreement shall be binding upon and inure to the benefit of Operator and Lessee and their respective successors and assigns.

j.  TRUTH INLEASING – OPERATOR IS CONSIDERED RESPONSIBLE FOR THE OPERATIONAL CONTROL OF THE AIRCRAFT UNDER THIS AGREEMENT, AN EXPLANTION OF THE FACTOR BEARING ON OPERATION CONTROL AND PERTINENT FAA REGULATIONS CAN BE OBTAINED FROM THE NEAREST FAA FLIGHT STANDARDS DISTRICT OFFICE, GENERAL AVIATION DISTRICT OFFICE OR AIR CARRIER DISTIRCT OFFICE. OPERATOR CERTIFIES THAT IT IS RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT DURING THE TERM OF THE USE AGREEMENT AND THAT IT UNDERSTANDS ITS RESPONSIBILITIES FRO COMPLIANCE WITH APPLICABLE FAA REGUGLATIONS.

k.  Lessee and Agent equally participated in the creation and negotiation of this Agreement and the rule of contra proferentem shall not be applied to either party. Lessee has advised OAgent to seek the advice of a lawyer to be certain all the language and text of the Agreement.

l.  This Agreement constitutes the entire agreement between the parties hereto, and any change or modifications to The Agreement must be in writing and signed by the parties hereto.

Signature Group,llc                             R&R Aircraft, Inc.; N425SV, LLC & Brito Air

IN WITNESS HEREOF, the parties have caused the Agreement to be executed and delivered as of this date.

Signature Group, LLC

By: _____

Kevin Parrott

President and CEO

Date  1·20·11

R&R Aircraft, Inc., N425SV, LLC & Brito Air

By: Humes McCoy Aviation as Agent of Operator

_____

Thay Humes

Chief Operating Officer

Date  1-19-11

[THIS    SPACE    INTENTIONALLY    LEFT    BLANK]

Signature Group, llc

R&R Aircraft, Inc.; N425SV, LLC & Brito Air